IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Assane Diouf,                                   :
                                                :
    Petitioner,                             :        Case No. 1:25-cv-834
                                                :
    v.                                      :
                                                :        Judge Susan J. Dlott
Kevin Raycraft, Immigration and                 :
Customs Enforcement, Acting Director            :
of the Detroit Field Office, Enforcement        :        Order Denying Without Prejudice
and Removal Operations,                         :        Petition for Writ of Habeas Corpus
                                                :
    Respondent.                             :

Petitioner Assane Diouf, a native of Mauritania, filed a Petition for Writ of Habeas

Corpus ("Habeas Petition") challenging his detention by the United States Immigration and

Customs Enforcement ("ICE") as he awaits execution of a final order of removal from the

United States.  (Doc. 1.)  Diouf entered the United States in or around June 2002.  (Doc. 7-1 at

PageID 46; Doc. 8 at PageID 49.)  He is subject to a removal order to Mauritania that has been

administratively final since August 29, 2013.  (Doc. 1 at PageID 5; Doc. 7-1 at PageID 47.)  ICE

has detained Diouf at the Butler County, Ohio Jail since October 28, 2025.  (Doc. 7-1 at PageID

47.)  In the Habeas Petition, Diouf asserts that his continued detention is unlawful on the basis

that his removal is not reasonably foreseeable.  He does not challenge the removal order itself.

Also pending before the Court is an Emergency Motion for Relief filed by Respondent

Kevin Raycraft, ICE, the Acting Director of the Detroit Field Office, Enforcement and Removal

Operations.  (Doc. 9.)  Respondent asks for relief from the Court's November 18, 2025 Order

prohibiting ICE from transferring Diouf out of the Southern District of Ohio.  (*Id.*)  For the

reasons below, the Court will **DENY WITHOUT PREJUDICE** the Habeas Petition and **DENY**

1

**AS MOOT** the Emergency Motion for Relief.

## I. BACKGROUND

### A. Factual History

Diouf, a native and citizen of Mauritania, entered the United States in New York on June 19, 2022 using a French passport.  (Doc. 7-1 at PageID 46.)  He applied for asylum with the Immigration and Naturalization Service on October 25, 2002.  (*Id.* at PageID 47.)  An Immigration Judge initially ordered Diouf removed *in abstentia* on June 23, 2008, but then rescinded the initial removal order, and reopened the removal proceedings on August 19, 2008. (*Id.*)

The Immigration Judge ordered Diouf to be removed to Mauritania on March 30, 2012. (*Id.*)  Diouf appealed the removal order to the Board of Immigration Appeals ("BIA"), but the BIA dismissed the appeal on August 29, 2013.  (*Id.*)  Diouf filed an appeal with the Sixth Circuit Court of Appeals.  (*Id.*)  Diouf was released and placed on an Order of Supervision on December 2, 2013 during the pendency of appeal.  (*Id.*)  The Sixth Circuit denied the petition for review of the BIA order on December 12, 2014.  (*Id.*)

ICE issued an Addendum to Diouf's Order of Supervision on February 27, 2018.  (Doc. 1-3 at PageID 17.)  He was required under the Addendum to "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document" and any "written responses."  (*Id.*)  Diouf alleges that he regularly checked-in with ICE via video calls. (Doc. 1 at PageID 5.)  ICE issued letters dated June 7, 2023 and May 8, 2024 stating that Diouf was compliant with his Order of Supervision as of those dates.  (Doc. 1-3 at PageID 18–19.)

ICE took Diouf back into custody on October 28, 2025 during his required check-in. (Doc. 1. at PageID 5–6; Doc. 7-1 at PageID 47.)  He is being detained at the Butler County Jail.

(Doc. 9-1 at PageID 67.)  On November 7, 2025, almost six months ago, an ICE Enforcement and Removal Operations ("ERO") officer requested travel documents for Diouf from the government of Mauritania.  (Doc. 7-1 at PageID 48.)  Mauritania has not yet issued travel documents for Diouf.

**B.      Procedural Posture**

Diouf filed his Habeas Petition under 28 U.S.C. § 2241 on November 14, 2025.  (Doc. 1.) Diouf does not challenge the removal order mandating that he be removed—that is, deported—to Mauritania.  Rather, he asserts that his detention while awaiting removal is unlawful because he is not likely to be removed to Mauritania in the reasonably foreseeable future.  He asserts three claims for relief: (1) a violation of substantive due process; (2) a violation of procedural due process; and (3) a violation of the Immigration and Naturalization Act ("INA") § 241, 8 U.S.C.§ 1231(a)(6).

On November 18, 2025, the Court filed an Order stating that "Respondent shall neither remove Diouf from this District nor allow him to be removed from this District unless or until the Court orders otherwise."  (Doc. 2 at PageID 20.)

Respondent filed a Return of Writ on December 11, 2025 arguing that the Habeas Petition should be denied because Diouf's detention pending removal is lawful.  (Doc. 7.)  Diouf filed his Reply on December 27, 2025.  (Doc. 8.)

Then on March 24, 2026, Respondent filed the Emergency Motion for Relief seeking relief from the November 18, 2025 Order to permit ICE to execute the removal of Diouf to Mauritania on a chartered deportation flight scheduled for March 29, 2026.  (Doc. 9.)  Diouf filed a brief in opposition, to which Respondent filed a Reply.  (Docs. 10, 11.)

There was initially confusion in the record as to Respondent's purported authority to

remove Diouf to Mauritania without a travel document.  ICE Deportation Officer Stephanie Parker stated in a sworn Declaration dated March 19, 2026 that Diouf had been "manifested as a passenger on a Special High Risk (SHRC) flight scheduled to depart the United States on March 29, 2026."  (Doc. 9-1 at PageID 68.)  She further stated that she had been informed by ICE's Removal and Operations ("RIO") division that the list of manifested passengers for the chartered flight was "provided to the Government of Mauritania."  (*Id.*)  She was also told that "removals to Mauritania are currently not dependent on the issuance or receipt of valid passports/travel documents and can be completed with expired Mauritanian passports/travel documents."  (*Id.*)  But Respondent did not prove or assert that Diouf has an expired Mauritanian passport or travel document.

Respondent also submitted the March 23, 2026 sworn Declaration of Miguel Rodriguez, a Detention and Deportation Officer for the Removal Management Division for RIO Africa responsible for facilitating removals to Mauritania.  (Doc. 9-2.)  He stated in relevant part as follows:

> On March 2, 2026, I received notification from the U.S. Department of State, Bureau of African Affairs, that they received a cable from the U.S. Embassy in Nouakchott, Mauritania. The cable indicated that the Mauritanian Government has agreed to accept the DHS Certificate of Identity for Departure from the United States (Form I-269) as a valid travel document for removing Mauritanian nationals from the United States.

(*Id.* at PageID 70.)  Respondent provided the Form I-269 issued by ICE on March 10, 2026 for Diouf with a listed destination country of Mauritania.  (Doc. 9-3 at PageID 72.)  The Form I-269 has an expiration date of June 9, 2026.  (*Id.*)  This is a document created by DHS, and it is not a traditional travel document issued by Mauritania.

The Court conducted a status conference on April 2, 2026 seeking to clarify what documents Mauritania required to accept back its citizens and whether deportations to

Mauritania had occurred on March 29, 2026.  The Court ordered Respondent to submit additional evidence.  (Doc. 13.)  Respondent submitted a second Declaration of Deportation Officer Parker on April 23, 2026.  (Doc. 14-1.)  She stated in relevant part as follows:

> 8. Based on information provided by ICE's Removal and International Operations ("RIO") division, ICE was able to successfully remove and repatriate 6 other Mauritanian nationals via the March 29th charter flight. These 6 individuals were to be removed with I-269s. Then, on March 28, 2026, prior to the charter flight's departure, the Mauritanian Embassy issued *laissez-passers* for these individuals. As such, ICE did not need to utilize the I-269s for their removal.
>
> 9. Based on the successful removal and repatriation of the 6 Mauritanian nationals, ICE expects that Diouf's removal is likely to occur in the reasonably foreseeable future.

(*Id.* at PageID 99.)

## II.     LAW AND ANALYSIS

### A.     Jurisdiction

The Court quickly will dispose of the Government's arguments that the Court lacks jurisdiction.  There is no dispute that 8 U.S.C. § 1252(g) divests this Court of jurisdiction to review the execution of immigration removal orders.  *See Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018).  But "the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims."  *Id.*  Section 1252(g) "does not suspend habeas review . . . in challenges to INS authority to indefinitely detain a non-citizen following the execution of a removal order."  *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *see also Karki v. Jones*, No. 1:25-CV-281, 2025 WL 1638070, at *8 (S.D. Ohio June 9, 2025) (finding that the district court had jurisdiction over "detention-based claim involve[ing] an independent inquiry of whether their removals are reasonably foreseeable").  Likewise, the Court has jurisdiction over Diouf's claims because he is not challenging the removal order itself, only his detention when his removal is allegedly not reasonably foreseeable.

Respondent's contention that jurisdiction is divested pursuant to 8 U.S.C. § 1252(a)(5) and (b)(9) likewise are unavailing.  Those provisions channel review of removal orders directly and exclusively to the appropriate court of appeals.  But again, Diouf is not challenging the removal order.  The Court concludes that it has jurisdiction and will turn to the merits of Diouf's claim.

**B.      Merits**

INA § 241 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  It further provides that the alien should be placed under supervision if he is not removed within the 90-day removal period.  8 U.S.C. § 1231(a)(3).  Therefore, an alien under a removal order usually is released from detention after the 90-day removal period.  In this case, Diouf was placed on an Order of Supervision on December 2, 2013 and then taken back into custody on October 28, 2025.

The parties appear to agree that 8 U.S.C. § 1231(a)(6), a special provision allowing for detention beyond 90 days for inadmissible aliens who have been ordered removed, applies to this case.  Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphasis added).

The Supreme Court read a limit into § 1231(a)(6) to keep the provision from running afoul of the Due Process Clause of the Fifth Amendment to the Constitution.  *Zadvydas v. Davis*, 533 U.S. 678, 689–690 (2001).  "A statute permitting indefinite detention would raise a serious

constitutional problem." *Id.* at 690.  The Supreme Court held that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Id.* at 689.  It further held that post-removal order detentions of six months are presumptively reasonable:

> Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701 (emphasis added).  Diouf has been detained for six months now.[1]

The Court then turns to the *Zadvydas* analysis.  Diouf first must provide "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." *Id.*  If he can meet that burden, then the Government must provide "evidence sufficient to rebut that showing." *Id.*  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.  Reasonable time is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.*

The Court finds that Diouf met his initial burden to prove that he is not likely to be removed in the foreseeable future.  Diouf has been under a removal order since 2013.  There is no evidence that Respondent took any steps at effectuate his release for the next twelve years.

---

[1]  This Court agrees with those courts holding that for detainees held less than six months, the presumption that their removal is significantly likely in the reasonably foreseeable future is rebuttable.  *See Ibrahima Camara, v. Field Office Dir. for Enf't and Removal Ops. Detroit*, No. 1:25-CV-740, 2026 WL 775585, at *8 (S.D. Ohio Mar. 19, 2026); *Nadaud v. Emerson*, No. 1:26-CV-90, 2026 WL 317558, at *2 (W.D. Mich. Feb. 6, 2026); *Munoz-Saucedo v. Pittman*, 789 F. Supp.3d 387, 397 (D.N.J. 2025); *Cesar v. Achim*, 542 F.Supp.2d 897, 903–904 (E.D. Wis. 2008).

Respondent took Diouf into custody on October 28, 2025, before they requested the travel documents from Mauritania ordinarily necessary to remove a noncitizen.  Six months have now passed since Respondent requested travel documents for Diouf, but Mauritania has yet to provide them.  Further, Respondent initially provided inconsistent statements about the type of document Mauritania required to establish citizenship, creating doubt that Mauritania would accept removals.  This evidence together was sufficient to satisfy Diouf's initial burden.

Therefore, Respondent was given the opportunity to rebut that showing with evidence. *See Zadvydas*, 533 U.S. at 701.  Respondent met its burden, despite not yet receiving travel documents or a *laissez-passer* for Diouf.  Respondent has confirmed that Mauritania may accept I-269s or will issue *laissez-passers* for its citizens.  Mauritania accepted removals of its citizens from the United States on the March 29, 2026 flight.  There is no reason to doubt that Mauritania would have accepted the removal of Diouf if he had not been subject to this Court's November 18, 2025 Order not to transfer him.  Accordingly, although Diouf's removal has been delayed, Respondent has demonstrated that it is likely Diouf will be removed to Mauritania in the reasonably foreseeable future.

District courts have held that "[m]ere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Estenor v. Holder*, No. 1:11-CV-743, 2011 WL 5572596, at *3 (W.D. Mich. Oct. 24, 2011), *report and recommendation adopted,* No. 1:11-CV-743, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011); *see also Ahmad v. United States Att'y Gen.*, No. 1:17-CV-359, 2017 WL 4271704, at *3 (S.D. Ohio Aug. 29, 2017) (quoting *Estenor* and collecting cases which hold the same), *report and recommendation*

8

*adopted*, No. 1:17CV359, 2017 WL 4250526 (S.D. Ohio Sept. 22, 2017); *Woldeghergish v. Lynch*, No. 1:25-cv-461, 2026 WL 71290, at *4–5 (S.D. Ohio Jan. 9, 2026) (denying habeas relief to Eritrean citizen despite a delay in obtaining his travel documents when ICE established that Eritrea was issuing travel documents and allowing removals again).  The Court concludes that Diouf's continued detention at this time does not violate due process or 8 U.S.C. § 1231(a)(6) as interpreted in *Zadvydas*.

## IV.    CONCLUSION

For the reasons above, Diouf's Habeas Petition (Doc. 1) is **DENIED WITHOUT PREJUDICE**.  Although Diouf has not shown an entitlement to habeas relief at this time, if his detention continues for an extended period or circumstances change, he may file another habeas petition at a later date to try to make the requisite showing under *Zadvydas*.  *Cf. Nasr v. Larocca*, No. CV 16-1673-VBF(E), 2016 WL 3710200, at *6 (C.D. Cal. Apr. 27, 2017); *Estenor*, 2011 WL 5572596, at *4.

Respondent's Emergency Motion for Relief (Doc. 9) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

9